IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

| | |
|---|---|
| CANDY WORKMAN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>HICCUPTV LLC and DOES 1-20,<br><br>Defendants. | Case No. 2:22-cv-1337<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY DEMANDED** |

Now comes the Plaintiff, CANDY WORKMAN ("Plaintiff"), individually and on behalf of all others similarly situated, by and through her attorneys, and for her Complaint against the Defendants, HICCUPTV LLC ("Hiccup TV") and DOES 1-20 (collectively, "Defendants"), Plaintiff alleges and states as follows:

**PRELIMINARY STATEMENTS**

1. This is an action for damages, injunctive relief, and any other available legal or equitable remedies, for violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, *et seq.*, resulting from the illegal actions of Defendants, in negligently, knowingly, and/or willfully placing, through their agent(s), automated sales, solicitation, and/or other telemarketing calls to Plaintiff's cellular telephone, in violation of the TCPA and its related regulations, thereby invading Plaintiff's privacy. Plaintiff alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

2. The TCPA was designed to prevent telephone calls like the ones described herein, and to protect the privacy of citizens like Plaintiff. "Voluminous consumer complaints about

1

abuses of telephone technology – for example, computerized calls dispatched to private homes – prompted Congress to pass the TCPA." *Mims v. Arrow Fin. Servs., LLC*, 132 S.Ct. 740, 744 (2012).

3. In enacting the TCPA, Congress intended to give consumers a choice as to how corporate and similar entities may contact them and made specific findings that "[t]echnologies that might allow consumers to avoid receiving such calls are not universally available, are costly, are unlikely to be enforced, or place an inordinate burden on the consumer." TCPA, Pub. L. No. 102–243, § 11. In support of this, Congress found that:

> [b]anning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the consumer, is the only effective means of protecting telephone consumers from this nuisance and privacy invasion.

*Id.* at § 12; see also *Martin v. Leading Edge Recovery Solutions, LLC*, 2012 WL 3292838, at *4 (N.D.Ill. Aug. 10, 2012) (citing Congressional findings on the TCPA's purpose).

4. Congress also specifically found that "the evidence presented to the Congress indicates that automated or prerecorded calls are a nuisance and an invasion of privacy, regardless of the type of call…." *Id.* at §§ 12-13.

5. Persons like Plaintiff have no control to stop unsolicited telemarketing calls placed to them, whether automated or otherwise.

6. In a recent decision, the Supreme Court interpreted the term "automatic telephone dialing system" and held that "[t]o qualify as an 'automatic telephone dialing system,' a device must have the capacity either to store a telephone number using a random or sequential generator *or* to produce a telephone number using a random or sequential number generator." *Facebook, Inc. v. Duguid*, 141 S.Ct. 1163 (2021) (emphasis added).

7. In *Duguid*, the Supreme Court provided an example of such systems, stating: "For

2

Case 2:22-cv-01337-BHL   Filed 11/10/22   Page 2 of 13   Document 1

instance, an autodialer might use a random number generator to determine the order in which to pick phone numbers from a preproduced list. It would then store those numbers to be dialed at a later time." *Id.* at 1171-72 fn. 7.

8. Further, both *Duguid* and the legislative history of the TCPA are clear that the original focus on prerecorded voice technology prohibition was the fact that such communications involved agentless calls, not on the question of whether a literal voice was used during those agentless calls. See Hearing Before the Subcommittee on Communications of the Committee on Commerce, Science and Transportation, United States Senate One Hundred Second Congress First Session July 24, 1992, Testimony of Robert Bulmash and Steve Hamm at pg. 11; 7 FCC Rcd. 8752 (F.C.C. September 17, 1992).

9. The Sixth Circuit has also recognized this distinction: "Congress drew an explicit distinction between 'automated telephone calls that deliver an artificial or prerecorded voice message' on the one hand and 'calls place by 'live' persons' on the other." *Ashland Hosp. Corp. v. Serv. Employees Int'l Union, Dist. 1199 WV/KY/OH*, 708 F.3d 737,743 (6th Cir. 2013).

10. Similarly, the FTC has observed that "prerecorded calls are by their very nature one-sided conversations, and if there is no opportunity for consumers to ask questions, offers may not be sufficiently clear for consumers to make informed choices before pressing a button or saying yes to make a purchase." 73 FR 51164-01, 51167 (Aug. 29, 2008).

11. Predictive dialers have long been considered automatic telephone dialing systems by the FCC. In fact, the FCC's first ruling on the TCPA in 1992 recognized the importance of restrictions on equipment such as predictive dialers. Referring in part to "predictive dialers" the FCC then opined that "both live [solicitation calls, such as with a predictive dialer] and artificial or prerecorded voice telephone solicitations should be subject to significant restrictions." 7 FCC

3

Rcd. 8752, 8756 (F.C.C. September 17, 1992).

12. Since 2003, the FCC has definitively held that predictive dialers qualify as an ATDS under the TCPA. *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Report and Order, 18 FCC Rcd. 14014, 14115 ¶¶ 131-134 (2003).

13. Similar to other autodialers, predictive dialers also call from a stored list of phone numbers, but utilize algorithms to "predict" when an agent will receive a live answer.

14. Rather than an agent manually dialing numbers, predictive dialers are generally used by loading a list of numbers into the dialer which then dials the numbers and forwards the calls to agents. An agent then signals readiness by logging into the phone system, at which point they will be joined to a campaign and be put in a queue to be forwarded a call once it connects with a consumer.

15. The FCC describes predictive dialers as follows:

> A predictive dialer is an automated dialing system that uses a complex set of algorithms to automatically dial consumers' telephone numbers in a manner that "predicts" the time when a consumer will answer the phone and a telemarketer will be available to take the call. Such software programs are set up in order to minimize the amount of downtime for a telemarketer. In some instances, a consumer answers the phone only to hear "dead air" because no telemarketer is free to take the call
> …
> a predictive dialer is equipment that dials numbers and, when certain computer software is attached, also assists telemarketers in predicting when a sales agent will be available to take calls. The hardware, when paired with certain software, has the capacity to store or produce numbers and dial those numbers at random, in sequential order, or from a database of numbers
> …
> Predictive dialers initiate phone calls while telemarketers are talking to other consumers and frequently disconnect those calls when a telemarketer is unavailable to take the next call…Predictive dialers reduce the amount of down time for sales agents, as consumers are more likely to be on the line when the telemarketer completes a call.

4

*Id.* at ¶¶ 8, fn. 31, 131, and 146.

16. Plaintiff and the members of the proposed classes defined below received telemarketing calls placed to their cellular telephones, placed by or on behalf of Defendant, which were made without the prior express consent of the recipients of said calls.

## JURISDICTION AND VENUE

17. This Court has jurisdiction pursuant to 28 U.S.C. § 1331, as this civil action arises under a law of the United States, the TCPA.

18. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Defendant Hiccup TV is located within this District and because a substantial part of the events giving rise to this claim occurred in this District.

## PARTIES

19. Plaintiff is an individual who was at all relevant times residing in Sayetteville, West Virginia.

20. Plaintiff is a "person" as defined by 47 U.S.C. § 153(39).

21. On information and belief, Defendant Hiccup TV is a limited liability corporation of the State of Wisconsin, whose principal place of business is located in Franklin, Wisconsin.

22. On information and belief, at all times relevant hereto, Defendants were engaged in the marketing and solicitation of television streaming services.

23. Defendant Hiccup TV is a "person" as defined by 47 U.S.C. § 153(39).

24. The true names and capacities of the Defendants sued herein as DOES 1-10 are currently unknown to Plaintiff, who therefore sues such Defendants by fictitious names. Each of the Defendants designated herein as a Doe is legally responsible for the unlawful acts alleged

herein. Plaintiff will seek leave to amend his complaint to reflect the true names and capacities of the Doe Defendants when such identities become known.

25. Plaintiff is informed and believes that at all relevant times, each and every Defendant was acting as an agent and/or employee of each of the other Defendants and was acting within the course and scope of said agency and/or employment with the full knowledge and consent of each of the other Defendants. Plaintiff is informed and believes that each of the acts and/or omissions complained of herein was made known to, and ratified by, each of the other Defendants.

## FACTS COMMON TO ALL COUNTS

26. On or about March 27, 2019, Defendants began placing unsolicited automated telemarketing calls to Plaintiff's cellular telephone.

27. Plaintiff had not previously sought out Defendants' services nor had Plaintiff attempted to retrieve information from Defendants about Hiccup TV's services. Therefore, Plaintiff did not have an "established business relationship" with Defendants, as set forth in 16 C.F.R. § 310.4(b)(iii)(B).

28. When Plaintiff answered Defendants' calls, she experienced a long pause, lasting approximately three to four seconds, then she heard a noise on the line before a representative of Defendants began speaking, which is indicative of an automated telephone dialing system.

29. During one of the initial calls Plaintiff received from Defendants, on or about March 27, 2019, when Plaintiff answered the call, she spoke to an employee, agent, and/or representative of Defendants who identified himself as "Nathan." Nathan then transferred Plaintiff to another employee, agent, and/or representative of Defendants. Plaintiff requested of this second individual that Defendants cease placing such telephone calls to her.

6

30. Despite Plaintiff's unequivocal request that Defendants cease calling her, Plaintiff received another unauthorized, automated telemarketing call from Defendants later that same day.

31. On information and belief, based upon Plaintiff's experiences in receiving Defendants' telephone calls as set forth above, Defendants' calls to Plaintiff were placed through the use of an automatic telephone dialing system ("ATDS") as defined in 47 U.S.C. § 227(a)(1).

32. Plaintiff never gave Defendants her prior express request, invitation, or permission for Defendants to place their telemarketing calls to her, nor did Plaintiff have an established business relationship with Defendants.

33. Defendants' unsolicited telemarketing calls were a nuisance to Plaintiff.

34. Defendants' calls were not for emergency purposes as defined by 47 U.S.C. § 227(b)(1)(A).

35. As a result of Defendants' acts and omissions outlined above, Plaintiff has suffered concrete and particularized injuries in fact, which include, but are not limited to, invading Plaintiff's privacy; intruding into her personal affairs; intrusion upon and occupation of the capacity of Plaintiff's telephone line without permission; wasting Plaintiff's time; and aggravation, annoyance, inconvenience, frustration, and similar categories of damages. Defendants' unsolicited telemarketing calls also constituted a form of the precise harm that Congress was attempting to prohibit with the TCPA, which was designed to remedy invasions of privacy and nuisances caused to Americans by automated telemarketing calls sent without consent. Plaintiff actually suffered this precise injury by receiving the unwanted calls, and having her privacy so invaded through a disturbance of her solitude, and unwanted intrusion of her technology and personal space. Accordingly, Plaintiff has Article III standing to seek redress for these violations in Federal Court.

## CLASS ALLEGATIONS

36. Plaintiff brings this action pursuant to Fed. R. Civ. P. 23, on behalf of herself and all others similarly situated, as a member of the proposed Class defined below.

37. Plaintiff brings this action on behalf of herself and all others similarly situated, as a member of the proposed class (the "Class"), defined as follows:

> All persons within the United States who received any telephone calls from Defendants to said person's cellular telephone made through the use of any automatic telephone dialing system or an artificial or prerecorded voice and such person had not previously provided express consent to receive such calls within the four years prior to the filing of this Complaint, through the date of class certification.

38. Defendants, their employees and agents are excluded from the Class. Plaintiff does not know the number of members in the Class, but believes the members number in the thousands, if not more. Thus, this matter should be certified as a Class Action to assist in the expeditious litigation of the matter.

39. The Class is so numerous that the individual joinder of all of its members is impractical. While the exact number and identities of the Class members are unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff is informed and believes and thereon alleges that the Class includes thousands of members. Plaintiff alleges that the class members may be ascertained by the records maintained by Defendants.

40. This suit is properly maintainable as a class action pursuant to Fed. R. Civ. P. 23(a) because the Class is so numerous that joinder of its members is impractical and the disposition of their claims in the Class Action will provide substantial benefits both to the parties and the Court.

41. There are questions of law and fact common to the Class affecting the parties to be represented. The questions of law and fact common to the Class predominate over questions which may affect individual class members and include, but are not necessarily limited to, the following:

   a. Whether Plaintiff and the Class members' telephone numbers were called by Defendants using an automatic telephone dialing system or an artificial or prerecorded voice;

   b. Whether Defendants obtained the prior express consent of Plaintiff and the Class members to call their cellular telephone numbers using an automatic telephone dialing system or an artificial or prerecorded voice;

   c. Whether Defendants' calls to Plaintiff and the Class members were placed for emergency purposes;

   d. Whether Defendants violated the TCPA, 47 U.S.C. § 227, *et seq.*,

   e. Whether Defendants' conduct was knowing and/or willful;

   f. Whether Plaintiff and the Class members were damaged thereby, and the extent of damages for such violations; and

   g. Whether Defendants and their agent(s) should be enjoined from engaging in such conduct in the future.

42. As a resident of the United States who received telephone calls placed via an automatic telephone dialing system or an artificial or prerecorded voice, made by or on behalf of Defendants, without her prior express consent and not for emergency purposes, within four years prior to the filing of this Complaint, Plaintiff is asserting claims that are typical of the Class.

43. Plaintiff has no interests adverse or antagonistic to the interests of the other members of the Class.

9

Case 2:22-cv-01337-BHL   Filed 11/10/22   Page 9 of 13   Document 1

44. Plaintiff will fairly and adequately protect the interests of the members of the Class. Plaintiff has retained attorneys experienced in the prosecution of class actions.

45. A class action is superior to other available methods of fair and efficient adjudication of this controversy, since individual litigation of the claims of all Class members is impracticable. Even if every Class member could afford individual litigation, the court system could not. It would be unduly burdensome to the courts in which individual litigation of numerous issues would proceed. Individualized litigation would also present the potential for varying, inconsistent or contradictory judgments and would magnify the delay and expense to all parties, and to the court system, resulting from multiple trials of the same complex factual issues. By contrast, the conduct of this action as a class action presents fewer management difficulties, conserves the resources of the parties and of the court system and protects the rights of each class member. Class treatment will also permit the adjudication of relatively small claims by many class members who could not otherwise afford to seek legal redress for the wrongs complained of herein.

46. The prosecution of separate actions by individual members of the Class would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of the other class members not parties to such adjudications or that would substantially impair or impede the ability of such non-party class members to protect their interests.

47. Defendant has acted or refused to act in respect generally applicable to the Class, thereby making appropriate final and injunctive relief with regard to the members of the Class as a whole.

48. Defendant failed to comply with the requirements of the TCPA and its regulations, including but not limited to 47 U.S.C. § 227(b), as to the Class members, with respect to the above-alleged transactions.

49. In multiple instances, Defendants placed calls to the Class members using an automatic telephone dialing system or an artificial or prerecorded voice, without the Class members' prior express consent, in violation of the TCPA, 47 U.S.C. § 227, *et seq.*

50. The size and definition of the Class can be identified through Defendants' records and/or Defendants' agents' records.

## COUNT I
## NEGLIGENT VIOLATION OF THE TCPA
## 47 U.S.C. § 227(b)

51. Plaintiff incorporates all of the allegations and statements made in paragraphs 1 through 50 above as if reiterated herein.

52. The foregoing acts and omissions of Defendants constitute numerous and multiple negligent violations of the TCPA, including, but not limited to, each and every one of the above cited provisions of 47 U.S.C. § 227(b).

53. As a result of Defendants' negligent violations of 47 U.S.C. § 227, *et seq.*, Plaintiff and the Class members are entitled to an award of $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

54. Plaintiff and the Class members are also entitled to and seek injunctive relief prohibiting such conduct in the future.

## COUNT II
## KNOWING AND/OR WILLFUL VIOLATION OF THE TCPA
## 47 U.S.C. § 227(b)

55. Plaintiff incorporates all of the allegations and statements made in paragraphs 1 through 50 above as if reiterated herein.

56. The foregoing acts and omissions of Defendants constitute numerous and multiple knowing and/or willful violations of the TCPA, including, but not limited to, each and every one of the above cited provisions of 47 U.S.C. § 227(b).

57. As a result of Defendants' knowing and/or willful violations of 47 U.S.C. § 227, *et seq.*, Plaintiff and the Class members are entitled to an award of $1,500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(C).

58. Plaintiff and the Class members are also entitled to and seek injunctive relief prohibiting such conduct in the future.

## **PRAYER FOR RELIEF**

Wherefore, Plaintiff prays for a judgment against Defendant as follows:

a. An order certifying the Class and appointing Plaintiff as Representative of the Class;

b. An order certifying the undersigned counsel as Counsel for the Class;

c. An order requiring Defendants, at its own cost, to notify all members of the Class of the unlawful, unfair, deceptive and unconscionable conduct herein;

d. Judgment against Defendants in the amount of $500.00 in statutory damages for each and every negligent violation of the TCPA by Defendants;

e. Judgment against Defendants in the amount of $1,500.00 in statutory damages for each and every knowing and/or willful violation of the TCPA by Defendants;

f. An order for injunctive relief prohibiting such conduct by Defendants in the future;

12

g. Judgment against Defendants for Plaintiff's court costs and other litigation costs, and reasonable attorneys' fees;

h. Pre-judgment and post-judgment interest as allowed by law; and

i. Any other relief deemed just and proper by this Court.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues and causes of action in this action which are so triable.

RESPECFULLY SUBMITTED,

CANDY WORKMAN

By: /s/ David B. Levin
Attorney for Plaintiff
Law Offices of Todd M. Friedman, P.C.
111 W. Jackson Blvd., Suite 1700
Chicago, Illinois 60604
Phone: (224) 218-0882
Fax: (866) 633-0228
dlevin@toddflaw.com